[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 4, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-14884

_____

D. C. Docket No. 05-20730-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAY PALMA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 4, 2008)**

Before EDMONDSON, Chief Judge, DUBINA, Circuit Judge, and
STORY,* District Judge.

PER CURIAM:

---

* The Honorable Richard W. Story, United States District Judge for the Northern District
of Georgia, sitting by designation.

Appellant Ray Palma appeals his conviction and sentence for the possession of a firearm and ammunition after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). On appeal, he raises two issues: (1) whether the district court erred in refusing to instruct the jury on a "temporary, innocent possession defense," and (2) whether Appellant is entitled to a new trial due to certain allegedly prejudicial remarks that the trial judge directed at defense counsel. For the reasons that follow, we affirm the conviction and sentence.

## I. BACKGROUND

Palma was convicted in 1996 of a felony offense for which he was imprisoned from January 17, 1996, until May 21, 1999, and for which he remained on supervised release from May 21, 1999, until December 17, 2001. On August 5, 2005, despite his status as a convicted felon, Palma accompanied his then-girlfriend Abril German to Ace's Indoor Shooting Range and Pro Gun Shop in Miami-Dade County, Florida. There, German approached an employee named Patricio Jiron at the sales counter, and she expressed her interest in purchasing a single-action .45 caliber firearm. Jiron showed German a Kimber .45 caliber single-action firearm from his gun box priced at $1,200. German picked it up and almost immediately declared that it was the firearm she wanted. She did not rack the gun's slide, remove the magazine, or ask any questions about the firearm. She

2

did not seek to test fire the gun before purchasing it.

German, an alien residing in the state of Florida, provided Jiron with appropriate identification and filled out Bureau of Alcohol, Tobacco, and Firearms ("ATF") Form 4473. She did not take the firearm with her on August 5, 2005, because of the State of Florida's five-day cooling-off period and because she did not present a concealed-weapons permit. During the transaction on August 5, 2005, Palma did not join German at the sales counter, nor did he ask Jiron any questions about the firearm. However, Jiron did testify that Palma was there with German and that he noticed them speaking with one another during the purchase.

Palma and German returned to Ace's on August 15, 2005. The employee assisting them that day called in George Depina, the owner of Ace's, to confirm that German's resident alien documentation and concealed-weapons permit were sufficient. Depina determined that the documents were acceptable and told his employees that the sale could proceed. Thereafter, Ace's contacted the Florida Department of Law Enforcement ("FDLE") to conduct a criminal background check. The FDLE approved German to take possession of the firearm the same day. However, Palma mentioned that he wished to change the finish of the firearm, and he asked how long it would take to refinish the gun. Ace's employee Andy Andrade showed them some finishes that were available. Palma made the

3

selection, and the gun was sent out for refinishing.

On either August 15 or August 16, 2005, ATF Special Agent Jacqueline Elbaum received a telephone call from Depina concerning a suspicious firearm purchase. He told her he believed that German was making a straw purchase for Palma. Agent Elbaum conducted an investigation and discovered that Palma was a convicted felon.

Meanwhile, Palma telephoned Ace's several times asking whether "my gun's back from refinishing." (DE:129:335-38.) Each time he called, Palma identified the gun as his. On August 26, 2005, the day after Hurricane Katrina struck south Florida, he called Ace's to ask whether he could come in and retrieve his gun. Andrade recognized Palma's voice on the phone and told him that he could not pick it up due to a power outage and damage from the hurricane.

Subsequently, Agent Elbaum learned that the firearm would be available for pickup at Ace's on September 1, 2005. She and other law enforcement agents established surveillance outside Ace's that afternoon. Palma called Ace's that day and was informed that the refinished firearm was ready. ATF agents observed a silver Chrysler minivan arrive in the Ace's parking lot at approximately 4:15 P.M.

Palma was driving the van, and he was accompanied by German and her sister,

4

Rena Almonte. Palma, German, and Almonte exited the van and entered Ace's.

Inside, an employee brought the firearm out of the safe and placed it on the counter in front of German and Palma.[1] German picked up the firearm and handed it to Palma, who said he liked the finish. Palma then took the gun in his hands, lifted it up, and pointed it in front of him as though he were firing the weapon, before finally putting it back down. He asked Depina for a specific brand of hollow-point ammunition for the gun. Depina informed him that Ace's did not have the requested brand and showed him a box of regular Ball PMC ammunition, which Palma agreed to purchase. While Andrade completed the sale of the ammunition to Palma, Depina contacted Agent Elbaum. Then, Andrade asked Palma and German whether they wanted to purchase pearl grips, and both said that they were interested. Andrade placed a special order for the pearl grips, which Palma and German planned to install later.[2]

Subsequently, Agent Elbaum and other law enforcement agents observed and videotaped Palma, German, and Almonte leaving Ace's and walking toward the van in the parking lot. Palma was carrying the box of PCM .45 caliber ammunition as he exited the store, and he had the receipt for the ammunition in his

---

[1]Almante testified at trial that she stood away from Palma and German during the transaction and rejoined them when they left the store.

[2] German paid for the grips, upon Palma's request.

pocket. German was carrying her purse and the box containing the Kimber .45 caliber firearm. Agents arrested German and Palma, seizing the firearm, the ammunition, and the receipt. The firearm and gun box were later submitted for fingerprint analysis. No usable fingerprints were found on the firearm itself, but experts identified two of Palma's fingerprints on the inside of the gun box.

On September 19, 2005, a federal grand jury in the Southern District of Florida returned an indictment against Appellant and German, charging them both with making a false statement in connection with the attempted acquisition of a firearm in violation of 18 U.S.C. § 922(g)(1). Appellant alone was charged with possession of a firearm and ammunition after having been convicted of a crime punishable for a term exceeding one year of imprisonment, in violation of 18 U.S.C. § 922(g)(1).

After retaining separate counsel, appellant and German each pled not guilty, and their trials were subsequently severed. German's trial preceded Palma's and resulted in an acquittal. On March 22, 2006, five days after German's acquittal, Appellant moved to allow German's attorney, Robert Simels, Esq., to act as his counsel, and the district court granted the motion. An eight-day jury trial began on April 20, 2006. On May 1, 2006, the jury returned a unanimous verdict finding Appellant not guilty of making a false statement to obtain a firearm but guilty of

6

unlawful possession of a firearm and ammunition. On August 31, 2006, the district court sentenced Palma to a 40-month term of imprisonment to be followed by a two-year period of supervised release. The court also ordered Palma to pay a $100 special assessment. Palma timely filed a notice of appeal from his conviction and sentence.

## II. DISCUSSION

### A. Jury Instructions

We review a district court's refusal to give a requested jury instruction for an abuse of discretion. United States v. Fulford, 267 F.3d 1241, 1245 (11th Cir. 2001). We will find reversible error only if "(1) the requested instruction correctly stated the law; (2) the actual charge to the jury did not substantially cover the proposed instruction; and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense." Id. (citing United States v. Martinez, 83 F.3d 371, 376 (11th Cir. 1996)). While a district court judge is "vested with broad discretion in formulating his charge to the jury so long as it accurately reflects the law and the facts," United States v. Silverman, 745 F.2d 1386, 1395 (11th Cir. 1984) (citing United States v. Borders, 693 F.2d 1318, 1329 (11th Cir. 1982)), a defendant "is entitled to have presented instructions relating to a theory of defense for which there is *any foundation* in the evidence, even though

7

the evidence may be weak, insufficient, inconsistent, or of doubtful credibility."

United States v. Lively, 803 F.2d 1124, 1126 (11th Cir. 1986) (emphasis in original) (quoting United States v. Young, 464 F.2d 160, 164 (5th Cir. 1972)).  In determining whether there is a proper evidentiary foundation for the instruction, the evidence must be viewed in the light most favorable to the accused.  United States v. Williams, 728 F.2d 1402, 1404 (11th Cir. 1984) (citing United States v. Lewis, 592 F.2d 1282 (5th Cir. 1979)).

Appellant argues that the district court erred in refusing to instruct the jury on the defense of transitory or temporary innocent possession of a weapon.  More specifically, he requested in writing the following charge:

> Ladies and gentlemen, Mr. Palma would not be guilty of the offense charged here if you find that he lacked any criminal purpose in possessing the ammunition and the possession of the ammunition was transitory, in other words, in light of the evidence herein you find that the defendant took, or was taking, adequate measures to rid himself of possession of the ammunition as promptly as reasonably possible.

(Appellant's Br. at A17 (citations omitted).)  The district court did not allow the instruction and did not allow argument on the issue during Appellant's closing argument.  Appellant now claims that he was denied a fair trial because he was not permitted to raise the theory of temporary, innocent possession.  However, for the

8

reasons discussed below, there was no abuse of discretion, because the facts presented at trial did not provide the necessary foundation for a theory of temporary, innocent possession.

To prove that a defendant committed an offense under 18 U.S.C. § 922(g)(1), the government must show that (1) he or she knowingly possessed a firearm or ammunition, (2) he or she was previously convicted of an offense punishable by a term of imprisonment exceeding one year, and (3) the firearm or ammunition was in or affecting interstate commerce. United States v. Deleveaux, 205 F.3d 1292, 1297 (11th Cir. 2000). We have consistently held that § 922(g) is a strict liability offense that "does not require the prosecution to prove that the criminal acts were done with specific criminal intent." Deleveaux, 204 F.3d at 1298 (citing United States v. Thompson, 25 F.3d 1558, 1563-64 & 1563 n.4 (11th Cir. 1994)).

Here, Palma claims that he examined and held the unloaded firearm only at his girlfriend's request and claims that he touched it for a matter of mere seconds. He argues that he "obtained the firearm innocently and rid himself of it in just seconds and that he helped his girlfriend carry her package to the car." (Appellant's Br. at 25.) Based on these claims, Appellant claims that he was entitled to a jury charge on the theory of innocent, transitory possession and that he

9

should have been permitted to argue that his brief handling of the firearm and of the ammunition did not constitute "possession" under 18 U.S.C. § 922(g)(1).

We have never before recognized the availability of an "innocent transitory possession" defense in a firearm possession case,[3] and we need not decide that issue today. Even assuming *arguendo* that such a defense were available, it was

---

[3] In the past, we have declined to entertain the theory of a "mere inspection" defense. See United States v. Beverly, 194 Fed. Appx. 624, 628 (11th Cir. 2006) (unpublished) (holding that a district court did not abuse its discretion in refusing to give a "mere inspection" instruction in a firearm possession case). And while we have indicated that a "justification defense" *may* be available, we have cautioned that the defense would be extremely limited, only applicable under "extraordinary circumstances." See Deleveaux, 205 F.3d at 1297 (agreeing with other circuits that such a defense may be available but only in extremely limited circumstances).

While it is a question of first impression in this circuit, several of our sister circuits have considered the theory of "temporary innocent possession," and the majority have declined to recognize it. Some circuits have expressly rejected the defense. See United States v. Johnson, 459 F.3d 990, 997-98 (9th Cir. 2006) (holding that such a defense would undermine the statutory design of § 922(g)); United States v. Teemer, 394 F.3d 59, 62-65 (1st Cir. 2005) (rejecting innocent possession defense and affirming district court's refusal to give jury an instruction on "fleeting" or "transitory" possession); United States v. Mercado, 412 F.3d 243, 250-52 (1st Cir. 2005) (rejecting innocent possession defense and holding that even momentary or fleeting possession of a firearm is sufficient under the statute); United States v. Gilbert, 430 F.3d 214, 218 (4th Cir. 2005) (rejecting the proposal of an exception to § 922(g)(1) when the defendant had no illicit motive and attempted to quickly rid himself of the firearm). Some have rejected substantially similar defenses. See United States v. Hendricks, 319 F.3d 993, 1004-05 (7th Cir. 2003) (holding that only justification defenses would be recognized); United States v. Adkins, 196 F.3d 1112, 1115 (10th Cir. 1999) (holding that trial court acted properly in refusing to give jury instruction on "fleeting possession" theory). The Second Circuit has held that the defense would not apply to the cases that have been presented to them, based on the facts as developed at trial. See United States v. Williams, 389 F.3d 402, 405 (2d Cir. 2004) (holding that the defendant's possession of the firearm was not so fleeting as to warrant an instruction on temporary innocent possession); United States v. Paul, 110 F.3d 869, 872 (2d Cir. 1997) (holding that possession was "not so fleeting as to extend the statute beyond its arguable limits").

The District of Columbia Circuit is the only court that has held otherwise. See United States v. Mason, 233 F.3d 619, 624-25 (D.C. Cir. 2000) (defining and applying the transitory innocent possession defense). That court very narrowly defines the limits of the defense to situations where the firearm was obtained by innocent means and for no illicit purpose and where the possession was transitory in light of the circumstances. Id. at 624.

10

not supported by the evidence in this case. At trial the government presented uncontroverted evidence that Appellant entered the gun shop and shooting range on two occasions, that he physically picked up the Kimber .45 caliber firearm, that he repeatedly referred to the firearm as "my gun," and that he requested, purchased, and carried away ammunition for the firearm. Furthermore, the very reason why Appellant's possession of the ammunition did not extend for a longer period of time was his arrest upon exiting Ace's and the officers' seizure of the box of bullets. Indeed, Appellant presented no affirmative evidence whatsoever that he attempted to rid himself of the ammunition. These facts simply do not support an "innocent transitory possession" instruction. Moreover, the trial court's instructions defining "knowingly" and "possession" adequately and accurately explained the level of conscious control over the firearm and the ammunition required under the law. For these reasons, the district court did not abuse its discretion in refusing to instruct the jury regarding a "temporary innocent possession" defense to the possession of a firearm.

**B. Conduct of Trial Judge**

We review a district judge's conduct during trial for an abuse of discretion as well. See United States v. Verbitskaya, 406 F.3d 1324, 1337 (11th Cir. 2005) (citing United States v. Cox, 664 F.2d 257, 259 (11th Cir. 1981)). "[I]n order to

11

amount to reversible error, a judge's remarks must demonstrate such pervasive bias and unfairness that they prejudice one of the parties in the case." United States v. Ramirez-Chilel, 289 F.3d 744, 750 n.6 (11th Cir. 2002).

Appellant argues that the district court judge made several negative remarks about defense counsel which resulted in prejudice to his client. Appellant argues that the "pervasively demeaning treatment" of defense counsel and the trial judge's refusal to give a curative instruction to the jury warrant a new trial. (Appellant's Br. at 17.) We disagree and conclude, instead, that the district court did not abuse its discretion and that a new trial is unnecessary.

It is apparent from the record that on several occasions, the district court admonished defense counsel and expressed its displeasure with his trial techniques. However, all of these instances occurred outside the presence of the jury.[4] Because a "clear effect on the jury is required to reverse for comment by the trial judge," we conclude that a new trial is not warranted. United States v. Rochan, 563 F.2d 1246, 1250 (5th Cir. 1977).

---

[4] Indeed, the trial judge dismissed the jury on several occasions in order to maintain proper control of the proceedings. While Appellant contends that one comment was made just as the first juror was reentering the courtroom, the district court made a factual finding that the juror had not yet entered the room. (See R. at 778 ("I was watching and no one was coming into the courtroom.").) The judge did not abuse her discretion in making this determination, nor did she abuse her discretion in refusing to give a curative instruction.

## III. CONCLUSION

We conclude that the district court did not abuse its discretion when it refused to instruct the jury on Appellant's theory of temporary innocent possession of a firearm.  Further, the district judge's conduct in this case does not warrant a new trial.  Accordingly, we affirm Palma's conviction and sentence.

**AFFIRMED.**