[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 30, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15227
Non-Argument Calendar

_____

D. C. Docket No. 07-00001-CR-ORL-19-KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TROY NOLAN HARKNESS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 30, 2008)**

Before ANDERSON, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Appellant Troy Nolan Harkness appeals his convictions and 210-month

sentence for possession of a firearm and ammunition as a convicted felon (Count 1), in violation of 18 U.S.C §§ 922(g)(1), 924(a)(2), and 924(e)(1), and possession of body armor as a convicted felon who previously had been convicted of a crime of violence (Count 2), in violation of 18 U.S.C. §§ 931(a)(1) and 924(a)(7).

## I. Facts

Harkness, a convicted felon, worked as a security guard at a motel in Orlando, Florida. Sergeant Arnold Alvarez learned that Harkness allegedly carried a taser at work and decided to investigate because state law prohibits a convicted felon from possessing a taser. Sergeant Alvarez and another officer drove to the motel and Harkness approached the car and began speaking with the officers. Harkness carried a pellet gun and taser on his belt. Alvarez seized these items and asked if Harkness had any other weapons on him. Harkness indicated that he had a knife in his front pocket, which he allowed Sergeant Alvarez to remove, and minutes later he indicated that he had a knife on a chain around his neck, which Alvarez also removed. Alvarez next obtained permission to search Harkness's nearby car where police uncovered two more knives and an extendable metal baton. Harkness was then placed under arrest for possession of the taser. He was not given Miranda[1] warnings.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

Upon arrest, Harkness again was asked if he had any weapons on him, and he indicated that he did not. A subsequent search uncovered no other weapons and Harkness was placed in the patrol car. Shortly thereafter, Harkness's girlfriend arrived and the police officers permitted Harkness to step out of the car and speak with her. Harkness asked an officer if he could give his girlfriend a package. When told by the officer that "it depended on what it was," Harkness admitted that he had a gun in the crotch area of his pants and that he did not want Sergeant Alvarez to know about it. Sergeant Alvarez was summoned and began to search Harkness, who told the sergeant, "Be careful. It has a hair trigger on it." The search revealed that Harkness was wearing a bullet-proof vest and had a loaded .380 caliber semi-automatic pistol concealed inside his jockstrap. Harkness was then transported to the police station. On the way there, the police officer did not ask Harkness any questions, but Harkness made several statements, including that he found the gun the day before and was planning to turn it in to the police.

Harkness was indicted in federal court for his possession of a firearm, ammunition, and body armor. Prior to trial, Harkness moved to dismiss the body armor charge, on the grounds that 18 U.S.C. § 931 does not contain a jurisdictional element, and therefore the statute was void under the Commerce Clause,[2] and, in

---

[2] U.S. Const. Art. I, § 8, cl. 3.

3

the alternative, the statute was unconstitutional as applied to him. Harkness also moved to exclude statements made and physical evidence seized after the arrest on the bases that the statements were given in violation of Miranda. All of the aforementioned motions were denied.

Among the witnesses at trial was William Leggett. Leggett testified that on September 19, 2006 he purchased a .22 caliber revolver for Harkness because Harkness worked in a "less than desirable area of town." Harkness later told Leggett that this gun had an "exposed hammer" that could catch on his clothing, so the two men met at a gun store on September 29, 2006 and Leggett purchased another firearm for Harkness, later identified as the .380 handgun seized by police.[3] Leggett testified that after Harkness was arrested, Harkness telephoned Leggett and told him that he lied in his "daily log sheet" by writing that he found the gun on the motel grounds. Harkness asked Leggett to report the gun "lost or stolen" in order to corroborate his story. Leggett complied with this request and attempted to bolster the story by stopping into several local stores and inquiring if they had found a gun that he lost.

Angel Rivera, the property manager at the motel where Harkness worked,

---

[3] Leggett acknowledged that he initially lied to federal agents and told them that he lost the gun. He recanted this story five or six days before trial, at which time he admitted that he purchased the gun for Harkness.

also testified at trial. Rivera indicated that following Harkness's arrest on October 2, Harkness's girlfriend turned over the security log, master key, and other motel property. After Harkness's release, Harkness delivered additional papers to add to the security log, but Rivera could not recall which papers were added. An entry in the security log dated October 1, 2006 corroborated Harkness's statement that he found the .380 handgun on motel property and planned to turn it in to the police department. Rivera also testified that Harkness tried to convince him to write a letter indicating that the motel approved the taser for Harkness's use, even though this was false. A resident of the motel similarly testified that although she had seen Harkness with a gun, Harkness asked her to write a letter indicating that she had never seen him with any weapons or guns.

At the conclusion of the evidence, Harkness asked that the court instruct the jury on the defenses of justification and innocent possession. Both motions were denied. The jury subsequently found Harkness guilty on both counts.

A Presentence Investigation Report ("PSI") was prepared and presented at sentencing. The charge with the highest offense level of the two counts, Count 1, possession of a firearm and ammunition by a convicted felon, carried a base offense level of 24. The PSI also suggested an upward adjustment of 2 levels for obstruction of justice and a Chapter Four enhancement because Harkness qualified

5

as an "armed career criminal" ("ACC").[4]  Harkness's total offense level, therefore, was 33.  The corresponding criminal history category of V yielded a guideline sentence of 210-262 months' imprisonment.  Harkness objected to the PSI, arguing that: (1) the obstruction of justice increase was improper; (2) he did not have the "predicate convictions" required for qualification as an ACC; and (3) he was entitled for a 2-level reduction for acceptance of responsibility.  The district court overruled all objections and imposed a sentence of 210 months'.

On appeal, Harkness raises the following arguments: (1) 18 U.S.C. § 931(a)(1) is an unconstitutional use of Congress's powers under the Commerce Clause; and (2) the district court erred by (a) denying Harkness's motion to suppress his statements and physical evidence; (b) refusing to instruct the jury on justification and innocent possession; (c) determining that Harkness should be sentenced as an ACC; (d) applying the enhancement for obstruction of justice; and (e) refusing to decrease Harkness's offense level for acceptance of responsibility.

## I. Discussion

### 18 U.S.C. § 931

Federal law prohibits felons convicted of crimes of violence from purchasing, owning, or possessing body armor.  18 U.S.C. § 931(a)(1).  Harkness

---

[4] U.S.S.G. § 4B1.4(b)(3)(B).

argues that this section is unconstitutional on its face and as applied to him because the statute contains no jurisdictional element and he did not cross state lines with the body armor.

We review the constitutionality of a statute de novo. United States v. Scott, 263 F.3d 1270, 1271 (11th Cir. 2001). Congress may regulate three broad categories of activity under the commerce power: (1) the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) activities with a substantial relation to interstate commerce. United States v. Lopez, 514 U.S. 549, 558-59 (1995). In Lopez, the Court held that a statute that made it a federal offense to possess a firearm in a school zone was unconstitutional because it did not fit within any of the three above categories and did not contain an express jurisdictional provision. Id. at 562 (explaining that the statute contained "no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce").

We need not decide whether this case fits into any of the above three categories because this court has held that an express jurisdictional element to a statute immunizes it from a facial constitutional attack. Scott, 263 F.3d at 1273. Body armor is defined as, "any product sold or offered for sale, in interstate or

7

foreign commerce, as personal protective body covering intended to protect against gunfire." 18 U.S.C. § 921(a)(35) (emphasis added). Therefore, Harkness's facial challenge to § 931's body armor restriction must fail, as the statute contains an express jurisdictional element.

Moreover, Harkness's as applied challenge also fails because an employee of the manufacturer of the body armor testified that the yarn of Harkness's vest was made in Virginia, woven into fabric in South Carolina, woven into a vest in Florida, and then shipped to a distributor in New Jersey. The vest was thereafter sold by the New Jersey distributor and ended up in Harkness's hands in Florida. There is therefore no doubt the body armor was "sold or offered for sale, in interstate or foreign commerce." 18 U.S.C. § 921(a)(35); see United States v. McAllister, 77 F.3d 387, 390 (11th Cir. 1996) ("[b]ecause the government demonstrated that the firearm possessed by McAllister previously had travelled in interstate commerce, [18 U.S.C. § 922(g)(1)] is not unconstitutional as applied to him").

We conclude that 18 U.S.C. § 931(a)(1) is a constitutional use of congressional power under the Commerce Clause

Motion to suppress statements and physical evidence

Harkness identifies several statements and pieces of evidence that he argues

8

the district court should have suppressed, including: (1) statements to the police about the existence and location of the gun; (2) the fruit of these statements, i.e. the gun itself; and (3) the inculpatory statements made on the way to the police station.

"We review a district court's denial of a defendant's motion to suppress under a mixed standard of review, examining the district court's findings of fact for clear error and the district court's application of law to those facts de novo." United States v. King, 509 F.3d 1338, 1341 (11th Cir. 2007). "Miranda forbids the prosecution from using statements made by a defendant during a custodial interrogation unless the defendant had first been advised of [his] constitutional rights." United States v. Paskett, 950 F.2d 705, 707 (11th Cir. 1992). A custodial interrogation occurs when the police engage in express questioning or its functional equivalent "that the police should know [is] reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

Both parties agree that Harkness was in custody when he made the inculpatory statements and that he had not been given Miranda warnings. The only issue, therefore, is whether he was interrogated. Turning first to the statements to the police about the existence and location of the gun, the district court accepted that Harkness was interrogated, but concluded that this situation fit under the

9

public safety exception to the Miranda requirement, as articulated in New York v. Quarles, 467 U.S. 649 (1984).

We need not address the district court's consideration of exceptions to the Miranda requirement because we conclude that Harkness was not interrogated.[5] Harkness was given permission to speak to his girlfriend and then asked the officer if he could give her a package, to which the officer responded that "it depend[s] on what it [is]." Harkness then indicated that he had a gun in his crotch area. This conversation does not implicate the concerns expressed by the Miranda Court. See United States v. Castro, 723 F.2d 1527, 1532 (11th Cir. 1984) ("[t]he whole purpose of Miranda, and thus of its rule, is to protect the privilege against self-incrimination from coercive questioning by the police and to ensure that any waiver of that right is made 'voluntarily, knowingly and intelligently'"). Here, the officer did not initiate the conversation, nor was there any objective evidence to indicate that the officer should have expected Harkness to incriminate himself. "It depend[s] on what it [is]" was a natural response by the officer to Harkness's unprompted question, and the officer had no reason to believe that his response was "reasonably likely to elicit an incriminating response from the suspect." Innis,

_____

[5] We may affirm on any adequate grounds, even if it is other than those the district court relied upon in making its determination. Parks v. City of Warner Robins, Ga., 43 F.3d 609, 613 (11th Cir. 1995).

10

446 U.S. at 301; see Garcia v. Singletary, 13 F.3d 1487, 1491-92 (11th Cir. 1994) (holding that a spontaneous reaction to a startling event, although "accusatorial in tone . . . was not an interrogation within the meaning of Miranda"). Thus, Harkness's statements and the gun were not the product of an illegal interrogation and were therefore properly admitted.

We similarly conclude that Harkness's statements made on the way to the police station were unprompted declarations and are therefore admissible because they were not made in response to an interrogation or its functional equivalent. See Miranda, 384 U.S. at 478 ("volunteered statements of any kind are not barred by the Fifth Amendment").

Requested jury instructions

Harkness next argues that the district court erred in its decision not to instruct the jury on the defenses of innocent possession and justification. We review a district court's refusal to give a requested jury instruction for an abuse of discretion. United States v. Palma, 511 F.3d 1311, 1314-15 (11th Cir. 2008). "We will find reversible error only if (1) the requested instruction correctly stated the law; (2) the actual charge to the jury did not substantially cover the proposed instruction; and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense." Id. at 1315 (quotations

11

omitted).

Turning first to justification, this court has held that the affirmative defense of justification is available to felon-in-possession charges under § 922(g)(1), but only in "extraordinary circumstances." United States v. Deleveaux, 205 F.3d 1292, 1297 (11th Cir. 2000). A defendant must show the following four elements to establish a justification defense in the context of § 922(g)(1):

> (1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

Id. These elements "require[] nothing less than an immediate emergency," United States v. Rice, 214 F.3d 1295, 1297 (11th Cir. 2000), and "if there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the defense[] will fail." United States v. Bailey, 444 U.S. 394, 410 (1980) (quotation marks omitted).

In this case, even if we ignore Leggett's testimony and accept Harkness's description of events as true, it is undisputed that Harkness had a cellular telephone on him at the time he allegedly found the firearm; therefore, he could have immediately contacted law enforcement to report the gun. United States v.

12

Presley, 487 F.3d 1346, 1350 (11th Cir. 2007) (the district court did not err in a felon-in-possession case in declining to instruct the jury on justification or necessity because the defendant had two cellular telephones on him at the time he allegedly found the gun). Accordingly, the district court properly refused to instruct the jury on the defense of justification because Harkness had a reasonable alternative to keeping the gun in his possession.

We also reject Harkness's innocent possession argument. This court has "never before recognized the availability of an 'innocent transitory possession' defense in a firearm possession case," Palma, 511 F.3d at 1316, and we need not decide today whether such a defense exists in this circuit. Where this defense is recognized, it requires proof of the following:

> (1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm was transitory- i.e., in light of the circumstances presented, there is a good basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible.

United States v. Mason, 233 F.3d 619, 624 (D.C. Cir. 2000). As noted above, Harkness had a cellular telephone, so he clearly did not "rid himself of possession of the firearm as promptly as reasonably possible." Id. As such, even if we recognized this defense, the district court did not err in declining to instruct the jury on the defense of innocent possession.

13

Sentenced as an ACC

Harkness was sentenced under the Armed Career Criminal Act ("ACCA"), which requires a minimum sentence of 15 years' imprisonment for a violator of 18 U.S.C. § 922(g) that has three previous convictions for "a violent felony or serious drug offense." 18 U.S.C. § 924(e)(1). Harkness acknowledges that two of his convictions are considered violent felonies under the ACCA, but contends that his felony conviction for leaving the scene of an accident should not be considered "violent."

We review de novo whether a particular offense constitutes a violent felony under the ACCA. United States v. Rainey, 362 F.3d 733, 734 (11th Cir. 2004). A violent felony is any crime punishable by imprisonment for a term exceeding one year that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). After Harkness was sentenced, the Supreme Court interpreted § 924(e)(2)(B) in Begay v. United States, __ U.S. __, 128 S. Ct. 1581 (2008). In holding that a conviction for a felony offense of driving under the influence of alcohol (DUI) is not a violent felony within meaning of the ACCA, the Court placed particular emphasis upon the fact

14

that the violent felonies listed in sub-section (ii) are all forms of "purposeful, violent, and aggressive conduct." Id. at 1586.

The government concedes that under this new precedent, the district court erred in labeling Harkness's felony conviction for fleeing the scene of an accident a violent felony. Although purposeful, his actions were not "violent" or "aggressive," and are therefore unlike the felonies listed in sub-section (ii). Harkness therefore does not have the requisite three violent felony convictions to bring him within the ambit of § 924(e)(2)(B). Accordingly, we vacate Harkness's sentence under the ACCA and remand to the district court for re-sentencing.

<u>Obstruction of Justice Enhancement</u>

Harkness also argues that the district court erred in concluding that he obstructed justice when, at the detention hearing, he told the magistrate judge that he found the gun on motel property and had intended to turn it over to the police. He contends that this was not obstruction because he admitted possessing the gun, and in any event his misstatement was not material.

We review a district court's factual findings regarding the imposition of an enhancement for obstruction of justice for clear error, and the district court's application of the factual findings to the guidelines de novo. United States v. Uscinski, 369 F.3d 1243, 1246 (11th Cir. 2004). An obstruction of justice

15

enhancement applies when the defendant provides "materially false information to a judge or magistrate." U.S.S.G. § 3C1.1, comment. (n.4(f)). Leggett's testimony at trial established that he purchased the gun for Harkness, and that Harkness's statements to the magistrate judge that he found the gun and planned to return it were therefore false, notwithstanding the fact that he admitted possession. Moreover, the false statements were material. See U.S.S.G. § 3C1.1, comment. (n.6) (a material statement is one where, "if believed, [it] would tend to influence or affect the issue under determination"). The issues of how Harkness acquired the gun and whether he intended to promptly turn the gun over to the police were certainly material to both his guilt and sentence. In fact, the defense's theory at trial was that Harkness found the gun. We therefore find that the district court did not err in applying the obstruction of justice enhancement.

<u>Acceptance of responsibility</u>

Finally, Harkness argues that he was entitled to a sentencing reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. He argues that he acknowledged from the start that he was a felon and was not supposed to have a gun, but merely went to trial to raise constitutional challenges.

A defendant bears the burden of showing that he is entitled to an acceptance of responsibility reduction, and we review the district court's findings for clear

16

error.  United States v. Anderson, 23 F.3d 368, 369 (11th Cir. 1994).  This court has acknowledged that a defendant is not to be punished for exercising his constitutional rights and "if a defendant has shown some sign of remorse but has also exercised constitutional or statutory rights, the sentencing judge may not balance the exercise of those rights against the defendant's expression of remorse to determine whether the 'acceptance' is adequate."  United States v. Rodriguez, 959 F.2d 193, 197 (11th Cir. 1992).  Harkness's argument, however, is belied by the record.  He did not simply argue that evidence obtained by the police should have been excluded.  Instead, his argument to the magistrate judge and his theory at trial were that he found the gun and planned to return it to the police.  At no time did he admit to illegally obtaining the gun from Leggett or take responsibility for his actions.  As such, the district court did not commit clear error in declining to assess a sentencing reduction for acceptance of responsibility.

For the foregoing reasons, we affirm the district court's judgment as to all issues except the determination that Harkness qualified as an Armed Career Criminal under 18 U.S.C. § 924(e)(1).  We therefore remand on that issue to the district court for resentencing consistent with this opinion.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

17