[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14776
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 8, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00038-CR-4-HLM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEFFREY BERNARD BEEMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 8, 2010)

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Jeffrey Bernard Beeman, through counsel, appeals his convictions for

possession of a firearm and ammunition by a convicted felon, and possession with intent to distribute cocaine. After review of the record and the parties' briefs, we AFFIRM.

## I. BACKGROUND

A federal grand jury returned a four-count superseding indictment charging Beeman with: (1) possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e) ("Count 1"); (2) possession with intent to distribute a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count 2"); (3) possession of a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c) ("Count 3"), and; (4) possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e) ("Count 4"). R1-41 at 1-3.

Prior to trial, the government notified Beeman of its intent to introduce evidence of Beeman's prior felony convictions, both from 23 February 1999, for possession of cocaine with intent to distribute. R1-36 at 1-2. The government stated that the prior convictions were relevant to show Beeman's motive, intent, preparation, plan, knowledge, and absence of mistake or accident and were therefore admissible under Federal Rule of Evidence 404(b). *Id.* at 2.

At trial, the government first presented the testimony of Polk County Police

2

Department ("PCPD") Corporal John Boe.  R2 at 14.  Boe testified that he conducted surveillance of Beeman's residence in November 2007 after a confidential informant told him that a Chevrolet pick-up truck was going to be transporting an individual to Beeman's residence for the sole purpose of purchasing crack cocaine.  *Id.* at 15-16, 18-19.  During his surveillance, Boe observed a vehicle matching that description arrive at Beeman's residence.  *Id.* at 19.  The driver remained inside the vehicle while the passenger went around to the front porch of the house.  *Id.* at 19.  Boe could not see the individual who came outside of the house, but could tell that the individual was a black male.  *Id.* at 20.  After departing the residence, Boe conducted a traffic stop and discovered illegal narcotics in the vehicle.  *Id.* at 15-16.  Boe thereafter obtained a search warrant for Beeman's residence, which was executed on 7 December 2007.  *Id.* at 16-17.  Pursuant to this search, officers recovered $802 in cash, made up mostly of $20 bills, a plastic bag containing a white residue suspected to be crack cocaine, a Glock 9-millimeter gun, an off-white substance believed to be crack cocaine, plastic sandwich bags, a set of digital scales, a 35 Marlin rifle, six live rounds of ammunition for the Marlin, and thirty-one rounds of ammunition for the Glock.  *Id.* at 16-17, 22-23, 29, 33.  The Glock, cocaine, and scales were found in a camouflage bag in a room adjacent to the bedroom and accessible from the

bedroom through a hole in the wall. *Id.* at 25-26, 53-54. Boe described the crack cocaine found at the residence as a $20 hit and testified that it was common for someone in Polk County to buy a $20 hit of crack cocaine in a small plastic sandwich bag. *Id.* at 33-34, 55. Boe further testified that the digital scales they found were the same kind that are commonly used to weigh illegal narcotics, noting that he had recovered approximately 150 such scales during 300-400 drug arrests in which he had been involved, and that he observed a white residue powder on the scales. *Id.* at 27-29. Expert witness Emily Bright, a forensic chemist, testified that the white rock-like substance found at Beeman's residence tested positive for cocaine and weighed 0.30 grams. *Id.* at 81-84, 87. Bright did not test the digital scales for the presence of cocaine. *Id.* at 86.

Boe stated that he also observed cameras on the side of the house and a video monitor inside showing the outside of the house and the driveway. *Id.* at 30-31. The surveillance system produced an audible alarm in Beeman's bedroom every time someone passed through the driveway gate. *Id.* Boe also observed a functioning police scanner inside the residence. *Id.* at 31-32. Beeman and Teria Benefield, the mother of Beeman's child, were the only adults at the residence when Boe executed the search warrant. *Id.* at 36, 40, 42.

Nathan Williams, a former investigator with the PCPD narcotics unit,

testified that he participated in the execution of the warrant and was responsible for searching the yard, the vehicles, and exterior buildings. *Id.* at 89-91. He recovered six rounds of 35 caliber ammunition from the Marlin, which was located in the rear passenger seat of a red sport utility vehicle that was parked in the yard. *Id.* at 94-96, 101. Williams also testified that in the center console of the vehicle he found a wallet containing Beeman's driver's license. *Id.* at 96-98. The government subsequently entered into evidence the registration for the vehicle, a red Chevrolet Tahoe, which showed that Beeman was the owner of the vehicle at the time it was searched. R3 at 73; Gov. Exh. 53; Gov. Exh. 17.

Agent Matthew Wright with the PCPD's narcotics enforcement team testified that he had previously done five controlled buys, all in Polk County, of crack cocaine for $20. R3 at 5-7, 9. During these purchases, he would be handed a small, unpackaged, off-white, rock-like substance. *Id.* at 8. Wright identified the small rock-like substance found at Beeman's residence as consistent with the crack cocaine he bought on those controlled buys. *Id.* at 8-9. Wright did not, however, make any controlled purchases from Beeman. *Id.* at 17-18. Wright further testified that he participated in the stop of the vehicle that left Beeman's residence on November 2007 and that the vehicle's passenger was found to be in possession of crack cocaine. *Id.* at 9-10.

5

The government then read to the jury a stipulation stating that Beeman had been previously convicted of a felony. *Id.* at 73-74. The court advised the jury that it was not to consider the stipulation as to Beeman's prior felony conviction "for the purpose of showing that he's a bad person or that he's done wrong in the past and, therefore, he must have done wrong now. It cannot be considered for that purpose at all." *Id.* at 74. Thereafter, the government argued, outside the presence of the jury, that it should be permitted to present evidence that Beeman's two prior convictions were for possession of cocaine with intent to distribute for the purpose of showing motive and intent. *Id.* at 74-77, 82. The government suggested the evidence was necessary because, while it had a strong circumstantial case, it lacked any direct evidence of Beeman's having sold drugs to anyone. *Id.* at 77. Beeman countered that his prior convictions were inadmissible because their probative value was outweighed by the danger of unfair prejudice. *Id.* at 85.

The district court concluded that the prior convictions were not unduly prejudicial, finding that the government needed them to prove its case and that they showed not only intent, but knowledge as to what the substance was, motive as to the reason for having the substance in his residence, and absence of mistake or accident. *Id.* at 86-87. After the court admitted Beeman's two prior convictions into evidence, it instructed the jury that the convictions were

6

admitted . . . for a very limited purpose; that is, to go to the issue of the defendant's intent. He is charged here in Count Two of the indictment with possessing cocaine with the intent to distribute it. The Government has the burden of proving beyond a reasonable doubt that if he did possess any illegal substance in this case, he did so with the intent to distribute.

It's also admissible for the purpose of knowledge as to what the substance is and – that is, the knowledge of the defendant as to what the substance is, . . . and admissible for the purpose of showing the absence of any accident or mistake in connection with the facts in this case and the actions of the defendant in this case. Now, that is the limited purpose for which that evidence was admitted by the Court.

I want to further caution you that you may consider that evidence not to prove that the defendant did the acts charged in this case, you may not use it for that purpose at all. It is admissible only for the purpose of proving the defendant's state of mind; that is, that the defendant acted as charged in this case with the necessary intent and not through accident, mistake, or other innocent reason, and for the purpose of showing knowledge, if it does.

*Id.* at 91-92.

At the close of the government's case-in-chief, Beeman moved for judgment of acquittal, which the district court denied. *Id.* at 93, 98. Beeman then called his father, Matt Beeman, who testified that ten of his eleven children lived within seven to ten miles of him and they all often borrowed each others' vehicles. *Id.* at 101-04. He remembered the red Chevrolet Tahoe, had seen it at Beeman's

7

residence, and drove it on one occasion. *See id.* at 106-08, 113-14.

Lastly, Beeman's brother, McCurry Beeman, testified that he often stayed at Beeman's residence and had previously lived there for a two-month period. *Id.* at 122-23. He also testified that a family friend, Ray Dyer, lived with Beeman at one point. *Id.* at 124. McCurry drove every vehicle at Beeman's residence and, in particular, drove the red Tahoe "a lot" between the end of November and the beginning of December 2007. *Id.* at 124-25. He testified that the 35-caliber rifle belonged to him, and that he used it for target practice and usually kept it loaded. *Id.* at 126-27. At the close of all of the evidence, Beeman renewed his motion for judgment of acquittal, which the district court again denied. *Id.* at 152.

During the jury charge, the district court repeated its cautionary instructions, advising the jury, *inter alia*, that it may consider evidence of Beeman's prior convictions

> to determine whether the defendant had knowledge or state of mind or intent necessary to commit the crime charged in Counts One – well, to commit the crimes charged in the indictment . . . and whether or not the defendant committed the acts for which the defendant is on trial by accident or mistake.

R4 at 14.

After the jury was excused, the government advised the court that although the court had instructed the jury that it could consider evidence of Beeman's prior

8

convictions as to all counts of the indictment, that evidence should have been limited "strictly to Count Two and not as to the other counts in the indictment." *Id.* at 28. Defense counsel indicated that he did not recall specifically the district court making the error, but deferred to the government and suggested that if there had been a mistake, the court ought to "clear it up, perhaps recharge them on just that one brief point." *Id.* The government responded that if Beeman did not have an objection to the charge, then it should stand, at which point defense counsel stated that he "would have had no specific objection" to the charge as read. *Id.* at 29. The court asked defense counsel if it was "alright" to leave the instruction "as it [was]," to which defense counsel again responded, "I wouldn't have had a specific objection on this, Your Honor." *Id.* The court then asked the government if the charge was satisfactory, and the government again responded that it was, "[i]f defense counsel has no objection[.]" *Id.* Both parties then indicated that they had no other objections. *Id.*

The jury found Beeman guilty as to Counts 1, 2, and 4, and not guilty as to Count 3. *Id.* at 35; *see also* R1-55. The district court entered judgment accordingly, and sentenced Beeman to 210 months of imprisonment. R1-71 at 1-3. This appeal followed.

9

## II. DISCUSSION

Beeman argues on appeal that: (1) the district court erred under Rule 404(b) in allowing the government to present evidence of his two prior convictions; (2) the district court improperly instructed the jury when it failed to limit the jury's consideration of the Rule 404(b) evidence to Count 2; and (3) the evidence was insufficient to sustain convictions as to Counts 1, 2, and 4. We address each argument in turn.

### A. *Rule 404(b) Evidence*

"We review the district court's admission of prior crimes or bad acts under [Rule] 404(b) for abuse of discretion." *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005) (per curiam). Rule 404(b) provides, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . .

Fed. R. Evid. 404(b). We employ a three-prong test to determine whether evidence of a defendant's prior crimes or bad acts is admissible under Rule 404(b). *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003). "First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the

defendant committed the extrinsic act. Third, the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403." *Id.* (quotation marks and citation omitted). With respect to the third and final prong, we look at the similarity of the acts, the government's need for such evidence, the temporal proximity between the prior conviction(s) and the present offenses, and any steps taken by the district court to eliminate "especially prejudicial aspects" of the defendant's prior conviction(s). *Id.* at 1282.

Although Beeman's prior convictions occurred more than nine years before the indictment in this case, they were for the same offense charged in Count 2, to wit, possession with intent to distribute cocaine, and, as Beeman concedes, their admission was necessary for the government to prove its case. *See United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995) (district court did not abuse its discretion in determining that defendant's mid-1970's marijuana dealings were admissible "despite their differing nature and remoteness in time"). We cannot conclude that, under these circumstances, the district court erred in finding that the probative value of Beeman's prior convictions was not outweighed by the danger of unfair prejudice. *See Jernigan*, 341 F.3d at 1282 (noting that the determination of whether the probative value of extrinsic evidence is substantially outweighed by

11

unfair prejudice "lies within the sound discretion of the district judge and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness") (quotation marks and citation omitted)).   Moreover, the risk of any potential unfair prejudice was sufficiently mitigated by the district court's two limiting instructions.  *See Ramirez*, 426 F.3d at 1354.  We find no abuse of discretion in the district court's admission into evidence of Beeman's prior convictions under Rule 404(b).

B.  *Jury Instructions*

"We review the legal correctness of a jury instruction *de novo*."  *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000).  "[W]e will not reverse a conviction on the basis of a jury charge unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process."  *Id.* (quotation marks and omitted).  This is true even though parts of the jury instruction may be "confusing, technically imperfect, or otherwise subject to criticism."  *United States v. Beasley*, 72 F.3d 1518, 1525 (11th Cir. 1996) (per curiam).

Where a party invites error, however, we are precluded from reviewing that error on appeal.  *United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir. 2005).

A party invites error when it informs the district court that a jury instruction is acceptable. *Id.* In *Silvestri*, we held that the defendant "affirmatively waived his right to challenge the [jury] instruction when his counsel told the district court that the jury instructions 'covered the bases'" and invited any claimed error with respect to the challenged instruction when his counsel stated that "he didn't think [further elaboration on the elements of the money-laundering charge] was 'necessary,' that the money-laundering count was 'self-explained,' and that he was not requesting further instruction." *Id.* We likewise have found that a defendant invited error with regard to the introduction into evidence of a tape recording when his counsel responded "Yes, your honor" to the court's question "Is every-body agreeable to that?" *Jernigan*, 341 F.3d at 1290.

The record in this case reflects that Beeman failed to object to the Rule 404(b) instruction, despite multiple opportunities to do so. Although Beeman did not explicitly state that the instruction was acceptable, his words and actions "expressly accepted the language of the jury instruction, thereby inviting any claimed error." *Silvestri*, 409 F.3d at 1337.[1] We are thus precluded from invoking

_____

[1] Even assuming Beeman did not invite the error of which he now complains, his challenge nevertheless fails under a plain error standard of review, which we apply where, as here, a party fails to object to the error at the time it was made. *See United States v. Gonzalez*, 940 F.2d 1413, 1427 (11th Cir. 1991). Although the district court did not limit the Rule 404(b) instruction to Count 2, it instructed the jury that the Rule 404(b) evidence could be considered only for the purposes of proving knowledge, intent, or absence of mistake, and reminded the jury that it was not to consider this evidence for the purpose of concluding that Beeman was a bad

13

the plain error rule and reversing. *Id.* at 1327.

## C. *Sufficiency of the Evidence*

We review *de novo* the sufficiency of evidence, "examin[ing] the evidence in the light most favorable to the government, drawing all reasonable inferences and making all credibility choices in the government's favor." *Silvestri*, 409 F.3d at 1327. "We will not disturb a guilty verdict unless, given the evidence in the record, no trier of fact could have found guilt beyond a reasonable doubt." *Id.* (quotation marks and citation omitted).

## 1. *Counts 1 and 4*

To sustain a conviction under 18 U.S.C. § 922(g)(1), the government must prove beyond a reasonable doubt that: (1) the defendant was previously convicted of a felony; (2) that he knowingly possessed the firearm or ammunition; and (3) that the firearm or ammunition was in or affecting interstate commerce. *United States v. Palma*, 511 F.3d 1311, 1315 (11th Cir. 2008) (per curiam). Beeman challenges the sufficiency of the government's evidence with respect to the second element only. The government may satisfy this element by showing either actual

---

man, and, therefore, guilty of the crimes charged. The jury's acquittal of Beeman on Count 3 indicates to us that the jury obeyed these instructions. Because the court's instruction was not "so clearly erroneous as to result in a substantial likelihood of a grave miscarriage of justice," and the alleged error did not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings," we cannot conclude that the instruction in this case, although it may have been technically imperfect, amounts to plain error requiring reversal. *Id.* (quotation marks and citations omitted).

or constructive possession. *United States v. Leonard*, 138 F.3d 906, 909 (11th Cir. 1998). Actual possession exists when the defendant has physical possession of or personal dominion over the contraband. *Id.* Constructive possession, on the other hand, "need not be exclusive, and can be proven circumstantially by ownership, dominion, or control over the premises on which the [contraband] is located." *United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989) (per curiam) (citations omitted).

A reasonable jury could have concluded that Beeman was in knowing possession of the 9-millimeter Glock and the 35-caliber ammunition because he exercised dominion or control over the house and vehicle, both of which were owned by Beeman, in which the firearm and ammunition were found. *Cf Leonard*, 138 F.3d at 909 (evidence was insufficient for jury to conclude that defendant actually or constructively possessed a gun that was found in a car in which defendant was merely a passenger and over which defendant had no ownership, dominion or control). Beeman's brother's testimony that he owned the ammunition is of no consequence because constructive possession need not be exclusive. *Poole*, 878 F.2d at 1392. Moreover, we must assume that the jury discredited his brother's testimony, which it was entitled to do. *See United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006) ("The jury gets to make any

15

credibility choices, and we will assume that they made them all in the way that supports the verdict.").

*2. Count 2*

To sustain a conviction under 21 U.S.C. § 841(a)(1), the government must prove beyond a reasonable doubt the following three elements: (1) knowledge, (2) possession, and (3) intent to distribute. *See United States v. Mercer*, 541 F.3d 1070, 1076 (11th Cir. 2008) (per curiam), *cert. denied*, ___ U.S. ___, 129 S. Ct. 954 (2009). Again, the possession element may be proven through actual or constructive possession, and constructive possession need not be exclusive. *Poole*, 878 F.3d at 1392.

Testimony at trial shows that officers found the $20 hit of cocaine inside Beeman's residence, in a room that was adjacent to and accessible from his own bedroom. Because Beeman exercised dominion or control over the premises where the cocaine was found, the jury could reasonably have concluded that Beeman constructively possessed the cocaine. *See id.* (evidence that "defendant was the sole owner of the house; cocaine was found under the couch on which she was lying when the police entered the house; cocaine was found in an urn in her bedroom; a plastic bag containing money and trace amounts of cocaine were found under her bed; equipment and material for diluting the quality of the cocaine were

16

found in the dining room; and a sophisticated scale containing trace amounts of cocaine was found in plain view in the kitchen" was sufficient to establish constructive possession of cocaine, even though defendant "did not have exclusive control over the premises").

The government also introduced sufficient evidence from which a reasonable jury could have inferred that Beeman intended to distribute the cocaine. "Intent to distribute can be proven circumstantially from, among other things, the quantity of cocaine and the existence of implements such as scales commonly used in connection with the distribution of cocaine." *Id.*; *see also Mercer*, 541 F.3d at 1076 (evidence, including plastic bags, a drug ledger, a large quantity of methamphetamine, the lack of paraphernalia used to consume the drug, and testimony that the defendant had purchased drugs the day of his arrest, was sufficient for jury to infer an intent to distribute). The following evidence was presented at trial in this case: (1) Beeman's residence contained digital scales, plastic bags, and a large number of $20 bills; (2) a $20 "hit" of cocaine is commonly bought on the street; and (3) an informant told officers that a vehicle was going to Beeman's residence to purchase cocaine, and officers subsequently found cocaine on one of the vehicle's passengers. Moreover, the jury could infer from Beeman's prior convictions that Beeman possessed the cocaine with the

17

necessary intent to distribute it and not because of accident or mistake.

## III. CONCLUSION

Beeman appeals his convictions for possession of a firearm and ammunition by a convicted felon and possession with intent to distribute cocaine. For the foregoing reasons, we AFFIRM.

**AFFIRMED.**